**LILLARD et v LILLARD et**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5653.  Decided July 17, 1939

Starbuck Smith and Starbuck Smith, Jr., Cincinnati, for trustees.

Charles E. Weber, Cincinnati, for Louise P. Lillard and W. Parlin Lillard.

Charles Tatgenhorst, Cincinnati, for great-grandchildren.

Harry B. Mackoy, Cincinnati, for Louise de L. Parlin et al, appellees.

## OPINION

By MATTHEWS, J.

As this appeal on law and fact reaches this court from the Common Pleas Court of Hamilton County, it presents the single question of the correct construction of the terms of the deed of trust executed by A. J. Parlin on the 25th day of April, 1909, as to the disposition of the corpus of the trust estate upon the termination of the trust under the power given to certain beneficiaries so to do.

A. J. Parlin owned all the corporate stock of The Kenton Baking Powder Company at the time of the creation of this trust, and that was and is the subject-matter of the trust, although its form and name has been changed from time to time through amendments of the corporate charter.

At the time he had a wife, Corinne P. Parlin, and two children, John A. Parlin and Louise P. Lillard (both by a former marriage, and two grandchildren, W. Parlin Lillard, son of Louise P. Lillard, and Louise de L. Parlin, daughter of John A. Parlin. Since then, two other children were born to Louise P. Lillard, but both are now dead without issue. John A. Parlin had two other children—John A. Parlin, Jr., and Stella Parlin Hargrave, and all three of his children are still living, but have no children. All these grandchildren ex-cept the first two, were born after the creation of the trust, but before the death of the trustor. W. Parlin Lillard has three children, who were born after the trustor's death—W. Parlin Lillard, Jr., Margaret Louise Lillard, and John Stoll Lillard.

The only power reserved by the trustor was to appoint the successor trustee, should his original nominee—John A. Parlin—die before the trustor. This event transpired, and on the death of John A. Parlin, in 1914, the trustor did name a successor trustee and thereafter filled other vacancies in the trusteeship.

The trustor seems to have thought that he reserved greater powers, and, in 1913, executed another declaration of trust, differing in phraseology, and, perhaps, in legal effect, from the declaration of trust here under construction. It is conceded that this second declaration of trust was a nullity, in that it attempted to dispose of property, over which the declarant had no such power of disposition.

Births and deaths, changes in the business management of The Kenton Baking Powder Company, and, perhaps, other circumstances, conceivably may have caused the trustor to desire a different disposition of this stock, and this later desire may not have remained constant. He left a will, which presumably expressed his final wish. But these subsequent acts and declarations are not effective to directly disturb the irrevocable trust created in 1909, or to indirectly do so by influencing an interpretation of its terms contrary to the words used in the circumstances then existing.

In the trust instrument, the trustor declared the consideration to be the work and labor of the trustee in carrying on and developing the business of The Kenton Baking Powder Company, and "in consideration of a desire to properly provide for the future of the family of the first party hereto and in consideration of the undertaking by the second party to the carrying out the purposes and intentions of this trust."

The purpose of the trust is stated as follows:

"(1) Second party, John A. Parlin, shall hold and own all the said capital stock and pay all the dividends for and during the life of A. J. Parlin the first party hereto to said first party, A. J. Parlin, this payment to be made at such times as the dividends shall be declared by the board of directors of said corporation.

"2. From and after the death of first party the grantor herein, the said trustee John A. Parlin, shall pay the dividends on said capital stock to the following persons in the following manner:—one third of said dividends shall be paid by said trustee to himself for his own proper use, one third to the wife of the grantor, Corinne P. Parlin of Cincinnati, Ohio, the other one third to be paid by said trustee to Louise P. Lillard of Lawrenceburg, Kentucky. It is further provided that if either John A. Parlin, Louise P. Lillard or Corinne P. Parlin shall die without issue then the benefits under the trust that would have gone to said beneficiary shall be paid and go to the survivor or survivors in equal shares and in the same manner in which they hold their respective shares.

"If after the death of Corinne P. Parlin, John A. Parlin should die leaving no issue, then his beneficial interest shall be paid to his wife Louise E. Parlin so long as she remains single, during her life, then it shall go absolutely to the heirs of the grantor herein. Likewise if Louise P. Lillard shall die leaving no issue then her share in this trust shall revert absolutely to the heirs of the grantor herein. If either John A. Parlin or Louise P. Lillard dies leaving issue during the life of this trust, then the issue shall take the parent's beneficial interest in said trust estate per stirpes. If Corinne P. Parlin dies, then the benefits under this deed accruing to her shall vest in and go to John A. Parlin and Louise P. Lillard."

\* \* \*

"It is further provided that either all of said beneficiaries after the death of A. J. Parlin, by unanimous consent shall be empowered to determine this trust, or any survivor or survivors of said three beneficiaries shall be empowered to do so, in the case of death of any one or more."

"It is understood that the purpose of this instrument is to give the absolute control and management of said Kenton Baking Powder Company to the trustee John A. Parlin to operate according to his judgment for the benefit of A. J. Parlin while he lives and then for the benefit of Corinne P. Parlin, John A. Parlin and Louise P. Lillard."

"This trust shall terminate upon the death of the last survivor of the three beneficiaries namely John A. Parlin, Louise P. Lillard and Corinne P. Parlin and the stock shall vest absolutely in the issue of John A. Parlin and Louise P. Lillard and the trust shall end."

On September 7, 1937, Louise P. Lillard, as the sole survivor of the three immediate beneficiaries after the death of the trustor, and also one of the successor trustees, notified the trustees and all the children of John A. Parlin and Louise P. Lillard that she desired to and did terminate the trust under the power given the surviving beneficiary in the deed of trust. and that the estate should be distributed to those entitled under the terms of the trust deed.

The appellees contend (and the Common Pleas Court agreed with them when this contention was made in that court) that upon the termination of the trust in this way the distribution is governed by the provision for distribution upon the termination of the trust by the death of the survivor of Corinne P. Lillard, John A. Lillard and Louise P. Lillard, and that that provision providing that the estate shall vest absolutely in the issue of John A. Lillard and Louise P. Lillard requires a per capita distribution among them as a single class.

On the other hand, the appellants contend that the provision for distribution of the trust fund upon the death of the survivor of the three primary beneficiaries has no application to the termination of the trust by the exercise of the power so to do by such beneficiaries, that there is no direction as to the manner of distribution upon such contingency, and that, therefore, the fund, under such circumstances, is cast upon the trustor's next of kin under the intestate laws. They further contend that if the provision for distribution is applicable to the situation here presented, it is a distribution to two classes—one, the issue of John A. Parlin—and the other, the issue of Louise P. Lillard—and that, therefore, W. Parlin Lillard should receive one-half and the issue of John A. Parlin as a class the other half.

Both sides have had recourse to certain rules of construction of written instruments, although conceding that these rules are mere aids and must yield to the primary rule that the intention as expressed must be given effect, even though in conflict with any and all auxiliary rules of construction.

It is urged that the presumption against partial intestacy applicable in the construction of wills should be applied. To apply this rule to a grant inter vivos ignores the obvious intent of a testator to substitute his will as to the distribution of his property after death for the method of distribution provided by the law. Having set himself to that task, the natural inference is that he would complete it by including all of his property. No such intent can be imputed to a grantor. A will is ambulatory during the life of the testator, but a grant takes effect immediately. To hold that a grantor intends to convey all of his property when he executes a conveyance limited by the terms used to specific property and titles is to disregard human na-

ture and do violence to the meaning of words.

This trust instrument is a conveyance inter vivos and if any auxiliary rules of construction are invoked, they should be those applicable to that class of instruments.

It is a familiar rule of general application that the terms of an instrument are to be construed against the author. The terms of a grant are construed most strongly against the grantor. 8 R. C. L., 1051.

Another rule is that a grantor can not derogate from his own grant. Whatever weight these rules have it is on the side of the appellants fortifying the conclusion that the trustor must have intended, by giving the power to the beneficiaries to terminate the trust, to enable them to protect the beneficial interest which he had conveyed to them. They would preclude imputing to him an intent to withdraw a power included in the grant already made. It was an additional power conferred in furtherance of the grant. The clearly expressed purpose was to benefit the grantees. This power related to a title not conveyed to the beneficiaries. It is related to the legal title. They were given the power to terminate the separate existence of the legal title. For what purpose? It seems clear that the purpose was not to destroy the equitable title, but to protect it by merging the legal title with it in the ownership of the equitable title.

Now what was the trustor's intention, as expressed in this instrument? In searching for this intent, let us lay aside the last dispositive provision, which is relied on by the appellee, and take that up for consideration later to determine what effect it may have upon the intent discovered in the language that precedes it.

The trustor had a wife and two children. He owned all the stock in The Kenton Baking Powder Company. He had absolute control of the corporate

business. Apparently it was a successful business. His son, John A. Parlin, was actively engaged in the business and had inspired his father with confidence in his knowledge of the business and his ability to manage it. The trustor desired "to properly provide for the future of" his family after his death through the successful conduct of this business. He conceived the method of this trust as the likeliest means of preserving the success of the business and thereby providing for the future of his family.

Accordingly, he transferred all of the corporate stock to his son, John A. Parlin, in whom he had confidence, thereby giving to him full control over the corporate business. He expressly recites that the purpose of the instrument is to give the absolute control and management of The Kenton Baking Powder Company to John A. Parlin to operate according to his best judgment "for the benefit of A. J. Parlin while he lives and then for the benefit of Corinne P. Parlin, John A. Parlin and Louise P. Lillard." During his lifetime he was to have the income, but he did not reserve the power to displace John A. Parlin as trustee, and, after his (trustor's) death, John A. Parlin could not be removed or the trust terminated without John A. Parlin's consent.

The trustor did reserve the power to name the successor trustee should John A. Parlin die during his lifetime, but he gave no such power to the successor trustee as that given John A. Parlin, to perpetuate himself in the trusteeship. By the provision giving to the beneficiaries the power to terminate the trust after his death, he made the power of the trustee and the trust itself dependent entirely upon the will of such beneficiaries. And by beneficiaries, he clearly meant in this connection his widow and two children. or the survivors or survivor of them. They received all the profits from the trust at that time. They had an equitable title in the trust corpus and by terminating the trust they effectuated a merger of the legal and equitable titles, so that whatever equitable title they owned, either under the trust instrument or as next of kin or legatees of A. J. Parlin, was thereafter a full legal title. Had the trust instrument not been executed and the trustor had died intestate, they would have taken the full legal title under the intestate laws. If any part of the equitable title was not transferred by this instrument they, likewise, would take it either as next of kin or as legatees, subject only to reduction to the extent necessary to pay trustor's debts. Under the circumstances, he probably would have been justified in regarding any reduction as unlikely.

Now do the provisions of this instrument, now under consideration, provide for a different disposition?

In effect, the trustor provided that if either John A. Parlin or Louise P. Lillard should leave issue "then the issue shall take the parent's beneficial interest in this trust estate per stirpes." If either died without issue then "the share in this trust" or the "beneficial interest"—"shall go absolutely to the heirs of the grantor herein". As we construe these provisions, they create no vested title during the lifetime of the respective parents and upon the death of a parent only that parent's share devolved upon the issue of that parent without regard to whether that share was an absolute equitable title or subject to be defeated by the continued existence of the trust, by failure to exercise the power to terminate it until the death of the survivor of the three primary beneficiaries. Whatever equitable title there was, there was appurtenant to it the possibility of accretion of the equivalent legal title by the exercise by the beneficiaries of the power vested in them to terminate the trust.

Clearly, whoever was the holder of the equitable title, by the exercise by the primary beneficiary or beneficiaries of the power to terminate the trust, would thereby become the absolute owner of the equivalent legal title un-

der no obligation to hold in trust or to account to anyone. And if the trust instrument failed to provide for every contingency, thereby leaving a residuum of title in A. J. Parlin, the trustor, or his estate, this residuum would be merged in this legal title to make it complete in every respect.

But it is said that this ignores the last provision of the trust instrument, whereby it is provided that upon the death of the last survivor of the three beneficiaries—John A. Parlin, Louise P. Lillard, and Corinne P. Parlin—"the stock shall vest absolutely in the issue 'of John A. Parlin and Louise P. Lillard and the trust shall end."

It is urged that this is an absolute unconditional gift to a single class, to which is given the stock on the termination of the trust among the members of which it should be divided per capita. We do not stop to consider whether this gift, when construed in the light of the other provisions is a gift to a single class or to two classes. We pass this subject by, because as we read this provision it clearly states that it was to be operative on the happening of one contingency only—the termination of the trust by the death of the surviving beneficiary—and that event has not and can not transpire.

The trust will have been terminated before that event by the happening of another event—the exercise by the surviving beneficiary of the power to terminate it—thereby effectually destroying the trust, the continued existence of which until such surviving beneficiary died was essential to the taking effect of the gift to the issue.

That a trustor may reserve the power to terminate the trust is clear. By the exercise of the power every title created by the trust instrument is destroyed and the title of the trustor freed of every such title. And, of course, the power to terminate the trust completely includes the power to terminate it partially, or as to a particular estate created by the trust instrument. If the power to terminate this trust had been reserved in the trustor, his exercise of the power would have defeated the estate

of the issue. Whatever their estate, it was a part of the trust and the termination of the trust necessarily struck it down.

In **Cleveland Trust Co. v White, 134 Oh St 1, 11 OO 377,** the court sustained the validity of a trust intervivos, in which the settlor reserved the power of revocation, stating in the syllabus that:

"3. The reservation by a settlor of an unrestricted right to revoke the trust does not invalidate such trust, regardless of §8617, GC, in its present form."

And at page 11, speaking of **Union Trust Co. v Hawkins, 121 Oh St 159,** the court said:

"However, certain language in the opinion in the Hawkins case, unnecessary to a decision on the ground adopted by the court, is to the effect that in the absence of a statute permitting it, a valid trust can not be recognized where the settlor reserves the right of revocation. Such expression is opposed to the rule announced by all the courts of last resort in other jurisdictions which have spoken on the subject, and can not be regarded as controlling in Ohio, irrespective of §8617, GC. 40 O. Jur. 178, §39; 73 A. L. R., annotation at page 214; 3 Cincinnati Law Review 361, et seq; 43 Harvard Law Review, 521, at pages 533 and 534."

If the trustor could reserve to himself the power to terminate the trust, we perceive of no reason for withholding from him the power to bestow upon another such power. And if he has the right to bestow upon another the power to terminate the trust, we know of no reason in law for excluding a beneficiary as a donee of such power. It has been so decided.

The subject of revocation or termination of a trust by a donee was discussed in Schreyer v Schreyer, 91 N. Y. Supp., 1065. In that case the trustee was to pay the rents and profits to the settlor during her life and upon her death to

convey the property to such of her children in equal shares as she may leave surviving her. The power of revocation was in these words:

"The party of the second part accepts this trust upon the express reservation and condition that he may, if he so desires, at any time thereafter, rescind and surrender such trust, and reconvey to the party of the first part without being obliged to resort to any court."

The trustee exercised this power. The settlor thereafter conveyed the premises to the appellants and the respondent claimed title through the executor of the settlor. This case was decided by the appellate division of the Supreme Court of New York, all five judges concurring. We quote from the opinion because of the soundness of the conclusion and the clarity of the expression:

"The settlor had power in the instrument to provide for its revocation in such manner and by such person as she might designate, and if it be sufficiently definite in form to evince the intention of the settlor to revoke the same in such manner the courts are required to carry into effect such intention. With the exercise of this power the cestui que trustents are not concerned. The trustee under the deed took the power in trust to execute, subject to the power of the settlor, to revoke the same as she might provide. The cestui que trustent had no right or interest under the deed, save such as was acquired by the provisions of the instrument, and whatever interests they obtained were represented in the trustee, and the instrument itself was at all times subject to revocation, which, if exercised, defeated any rights which they might have arising thereunder. This in no wise affected the validity of the trust deed as to the children. The trust created was perfect and was capable of execution, and remaining unrevoked, they could have compelled the exercise of the powers contained therein for their benefit; but the interest they acquired therein was subject at all times to be defeated by the reserve power of revocation. It may be an unusual exercise of the power of revocation for the settlor to vest it in the trustee, but we know of no rule which prohibited her from making this provision in the trust deed, and we are not aware that the exercise of such a power violates any statute or the public policy of the law. The settlor had such power. All she did was to provide for its exercise, any provision in this respect being lawful and within her power, and she having clearly intended such a result, the courts are required to carry such intention into effect. * * * The power, however, being valid, the existence of the trust estate was made dependent upon the power of revocation and renunciation, and when the trustee exercised it, as he had a right to do, the trust fell to the ground, and the rights of the cestui que trustent were defeated. They lost no legal rights thereby, because their interest was at all times subject to the contingency of the execution of the power of defeasance, and when it was executed, all rights under the trust ceased. * * * It necessarily follows, therefore, that the executor of the settlor acquired good title to the property, and under the provisions of the will could convey the same. Judgment should be affirmed."

In Restatement of Trusts, Section 334, Comment E, it is said:

"Power of beneficiaries to terminate. By the terms of the trust, the beneficiaries, or some of them, may be given the power to terminate the trust, either with or without the concurrence of the trustee. Thus, where a trust is created in favor of one beneficiary for life, and another in remainder, it may be provided by the terms of the trust that the life beneficiary may by notice to the trustee, terminate the trust, and that the trustee shall thereupon convey to him free of trust."

We are of the opinion that Louise P. Lillard is the owner of one-half of the trust fund and the children of John A. Parlin, in equal shares, are the owners of the other half, and that the trust having been terminated by the exercise of the power vested in the surviving beneficiary, the trustee should distribute it to the persons so entitled.

A judgment so declaring may be entered.

HAMILTON, PJ. & ROSS, J., concur.