HOMER, APPELLANT, *v.* WULLENWEBER, JR., ET AL., APPELLEES.

(No. 7440—Decided June 11, 1951.)

*Mr. Charles P. Taft,* for appellant.
*Messrs. Brumleve, DeCamp & Wood* and *Mr. James B. Swing,* for appellees.

MATTHEWS, J.   The defendants, Nicholas Wullenweber, Jr., Henry Wullenweber, and Christina Wullen-

weber Neihard, demurred to the plaintiff's second amended petition on two grounds, first, that it did not state facts sufficient to constitute a cause of action and, second, that the cause of action, if it existed, was barred by the statute of limitations. The court sustained this demurrer and, the plaintiff not desiring to plead further, judgment was entered for the defendants. It is from that judgment that this appeal is taken.

It is apparent, therefore, that the sole question on this appeal is whether the second amended petition stated a cause of action that was enforceable at the time this action was instituted. In seeking an answer to that question, the second amended petition must be "liberally construed, with a view to substantial justice between the parties." Section 11345, General Code. Of course, for the purposes of the demurrer, the allegations of the second amended petition are admitted to be true, leaving only their legal sufficiency for determination.

In her second amended petition, the plaintiff alleged that she and the defendants, Nicholas Wullenweber, Jr., Henry Wullenweber, and Christina Wullenweber Neihard, are the only children and heirs at law of Nicholas Wullenweber, who died on December 19, 1938; that two days before his death he conveyed certain described real estate to the defendant Nicholas Wullenweber, Jr., who accepted the conveyance "upon the sole consideration of love and affection and of the obligation to hold the same in trust for the use and benefit of himself and his brother and sisters, the plaintiff and defendants equally"; and that about February 1, 1939, the plaintiff discovered "that the property had been thus conveyed * * * and demanded of Nicholas Wullenweber, Jr., that he convey her one-quarter interest to her. Said Nicholas Wullenweber, Jr., agreed to do so, but later after a deed was pre-

pared from him to plaintiff for a one-quarter interest in such property, failed and neglected to execute it on the ground that the situation of his sister Christina and the character of his brother, Henry, required that the trust should continue. At that time and thereafter, Nicholas Wullenweber, Jr., continued to assert that he held such property in trust for himself, the plaintiff and Henry and Christina Wullenweber, and at no time made any claim contrary to such equitable interest of the plaintiff.''

These allegations were followed by averments that on the 9th day of January 1946 Nicholas Wullenweber, without plaintiff's knowledge or consent, sold a part of the premises to the defendant The Contractors Construction Corporation for the sum of $13,000, and a few weeks thereafter tendered to her her proportionate share of the down payment, and as subsequent payments were made he tendered to her her share which she did not accept, and on or about May 1950, he withdrew such tenders.

These allegations were followed by averments of the sale of another portion of the premises to the same purchaser for $22,000, and that upon plaintiff discovering such sale and presumably upon plaintiff apprising him of that fact, the defendant Nicholas Wullenweber, Jr., tendered to her her proportionate share of the down payment and later tendered her her share of a subsequent payment, neither of which she accepted, and that during the month of May of 1950 Nicholas Wullenweber, Jr., withdrew such tenders.

The plaintiff alleged also that there were valuable sand and gravel deposits on the land from which Nicholas Wullenweber had sold a large quantity; that the purchaser of the two parcels knew at the time it purchased them that Nicholas Wullenweber, Jr., was a trustee; and that the property was worth more than twice what it had paid for it.

The plaintiff prayed that Nicholas Wullenweber, Jr., be declared a trustee of said real estate, for an accounting, that the deeds to The Contractors Construction Corporation be set aside, and that Nicholas Wullenweber be directed to convey such premises to the beneficiaries, and for such other equitable relief as might be just and proper.

While the second amended petition was silent as to whether any writing evidenced the obligation of Nicholas Wullenweber, Jr., to hold the property in trust, appellant's counsel, in his brief, states that the obligation is based on an oral agreement. As this agreement or declaration was contemporaneous with the convey-ance of the legal title, oral evidence is competent to support it.

In *Russell* v. *Bruer,* 64 Ohio St., 1, 59 N. E., 740, it was held, as stated in the second paragraph of the syllabus:

"A trust engrafted on an absolute deed may be shown by parol evidence; but the declaration of such trust must be contemporaneous with the deed, and the evidence beyond a reasonable doubt as to the existence of the trust, and must be clear, certain, and conclusive as to its terms and conditions."

If this oral evidence is of sufficient probative force, it established an express or, as it sometimes is called, a direct trust, which "are those trusts intentionally created by the direct and positive act of the settlor, by some writing, deed, or will, or oral declaration; they are distinguishable from trusts by operation of law, resulting and constructive, in that the latter are respectively founded upon an intention of the parties to a transaction implied in law, or upon fraud or wrong irrespective of the intention of the parties concerned." 54 American Jurisprudence, 33, 34, Section 15.

The plaintiff, in the second amended petition, al-

leged that the trust is for the use and benefit of the plaintiff and her brothers and sister. There was no allegation of any stipulation imposing any additional duty upon the trustee. However, in the absence of specific stipulations in the trust, equity imposes such obligations. Every trustee owes certain duties to the beneficiaries of the trust. He agrees to administer the trust; to be loyal to the cestui que trust; to not delegate to others the doing of acts which he can reasonably be expected to perform personally; to keep and render clear and accurate accounts with respect to the administration of the trust; to give the beneficiary upon request, at reasonable times, complete information respecting the trust property, and permit inspection; to use reasonable care to preserve the trust property; to keep trust property separate and not commingle it with his own; to make trust property productive; to pay income to the cestui que trust at reasonable intervals; and, finally, to account and pay over the corpus on termination of the trust. Of course, equity imposes other duties depending on the nature of the trust property, but the foregoing are some of the duties imposed upon all trustees in the absence of any express provision. 1 Restatment of the Law of Trusts, 430, Section 169 *et seq.*; 1 Scott on Trusts, 39, Section 4 *et seq.*

It appears from the allegations of the second amended petition that Nicholas Wullenweber, Jr., was placed in possession and control of the trust property and was, until his repudiation of the trust in 1950, engaged in administering the trust. His duties were more than those of the holder of the dry legal title who has no duty other than to convey the legal title to the beneficiary upon demand. He had active duties to perform. The trust was active. 1 Restatement of the Law of Trusts, 211, Section 69, Comment A. Such

being the case, the trustee was charged with all the duties of a fiduciary in the administration of the trust.

We fail to see any vagueness in the purpose of a trust created for the "use and benefit" of another, particularly when we have in mind, as just noted, that the duties of the trustee in administering such a trust are imposed by equity. No particular form of words or conduct is required. There is no indispensable ritual necessary to the formation of a trust. 1 Scott on Trusts, 147, Section 24.

But it is urged that this trust has no prescribed duration, which is true. However, we have been cited to no case and have found none holding that such a provision is essential. We know of nothing that would prevent the owner of property from creating a trust for the use and benefit of another, with the right of either the trustee or the cestui que trust to terminate the trust at will.

We are of the opinion that the second amended petition stated a cause of action.

It is also urged, and perhaps more earnestly, that whatever cause of action the plaintiff has alleged is barred by the statute of limitations. On this subject, the whole controversy resolves around the effect, if any, of Section 11236, General Code, upon the application of the other provisions of Chapter 2, Division I of Title IV, Part Third of the General Code, in other words, the provisions of the Code of Civil Procedure, limiting the time in which actions should be instituted.

Section 11236, General Code provides:

"The provisions of this chapter, respecting lapse of time as a bar to suit, shall not apply in the case of a continuing and subsisting trust, nor to an action by a vendee of real property, in possession thereof, to obtain a conveyance of it."

The defendants contend that the cause of action al-

leged was not one to enforce a continuing and subsisting trust within the meaning of that phrase as used in Section 11236, General Code, as construed by the courts; and that in any event the cause of action arose in February 1939, when the plaintiff demanded a conveyance to her of her share of the trust property and the defendant Nicholas Wullenweber, Jr., failed to comply therewith. As to this latter contention, we are of the opinion that the allegations, construed reasonably in favor of the plaintiff, did not show a persistent demand and an unqualified refusal. Rather, they showed that the plaintiff made a demand which she, by implication, withdrew after Nicholas Wullenweber, Jr., acknowledged the trust and explained the circumstances under which he was holding the property. There was no repudiation of the trust at that time. He continued to hold the property as theretofore, recognizing the trust by tendering to plaintiff a proportionate share of payments made on parcels sold by him and never expressly repudiating the trust, although, in May 1950, he withdrew the tenders theretofore made.

The real issue between these parties is whether the relationship between Nicholas Wullenweber, Jr., and his sisters and brother was of such a character that the statute of limitations started to run against whatever cause of action arose out of it at once, or upon discovery of their rights, or whether the relationship gave rise to no cause of action so long as Nicholas Wullenweber, Jr., carried out the purpose of his father in conveying the property to him. In other words, was the relationship that of trustee and cestui que trust of a continuing and subsisting trust within the meaning of Section 11236, General Code? If it was, then, so far as the allegations showed, Nicholas Wullenweber, Jr., continued to administer the property in accord-

ance with the purpose of his father, at least until May of 1950, and admittedly the action was filed within the statutory time for the accrual of the cause of action.

Counsel have cited and commented on many cases involving the question of the application of Section 11236, General Code, and also cases decided prior to the extension of the statute of limitations to most equitable actions, in which equity applied the statute by analogy to most equitable causes of action, but refused to apply it to actions for the enforcement of continuing and subsisting trusts.

Section 11236, General Code, is a codification of the equitable rule as it existed at the time.

We do not deem it necessary to discuss those cases in detail in order to disclose the basis of our conclusion that the cause of action alleged is not barred. Close analysis of the trusts involved in those cases is sufficient to reconcile any apparent conflict as to most of them. Most of them involved trusts created *in invitum*. They were either constructive or resulting trusts created by equity as a remedial device to effectuate justice and to redress a wrong, recognized and enforceable from the instant of the creation of the relation by law. Some others involved statutory trusts recognized and enforceable at law.

No such trust is described in the second amended petition. The trust described is an express, active, technical trust. It was intentionally established. The father conveyed the property to his son Nicholas for the purpose of creating a trust, and the son accepted the title for the purpose of holding and administering it as a trust in accordance with his father's purpose. Such a trust was formerly created and recognized solely in the court of chancery.

On the subject of the practice of courts of equity of applying the statute of limitations by analogy to equi-

table actions and the exceptions to that practice, prior to extension of that statute to equitable actions and the codification of that practice in the Code of Civil Procedure, it is said in 16 Ohio Jurisprudence, 276, Section 122:

"One of these [exceptions] was in the enforcement of an express trust by suit between the cestui que trust and the trustee. Such suits were, in general, not subject to any bar arising from mere lapse of time, nor, so long as the existence of the trust was acknowledged, was there any possibility of invoking the doctrine of laches against them. * * * The single principle underlying these qualifications of or exceptions to the rule that lapse of time did not bar the enforcement of a technical trust was that, where the trust itself had been terminated, the cause of action was no longer one for the enforcement of that trust. The trustee's repudiation was treated as equivalent to any other termination of the trust, and as giving rise to an immediate and distinct obligation to convey the trust property, or account for it to, or for the benefit of, the cestui. However, in order to have this effect, the conduct of the trustee must have amounted to an open repudiation; a mere technical breach, as by taking title absolutely in the trustee's name, without other circumstances indicating a position adverse to the trust, would not destroy the continuity of the latter. * * *

"The present statutes of limitations are substantially declaratory of these principles. * * * Thus, only those fiduciary obligations which are direct in character, of exclusively equitable cognizance, and which arise between the trustee and the beneficiary, are within the saving clause; these are not barred by lapse of time, however great, until the beneficiary has notice of the trust, and of its repudiation."

This rule that the statute of limitations does not ap-

ply to continuing and subsisting trusts is followed in most, if not all, jurisdictions. Indeed, it is grounded on fundamental principles. If time ran against a continuing and subsisting trust such fact would contain the virus of the trust's destruction from the time of its creation without any hostile act by either the trustee or beneficiary.

In 34 American Jurisprudence, 86, Section 107, it is stated:

"It is firmly established that so long as there has been no denial or repudiation of the trust, the possession of the trustee of an express and continuing trust is presumed to be that of the cestui que trust, and the statute of limitations does not run between them. To state the rule more accurately, the trusts against which the statute of limitations does not run are those technical and continuing trusts which are not cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of courts of chancery, while trusts which are the ground of an action at law are subject to the operation of the statute. In consequence of these rules, as long as the duties of a trustee remain undischarged, he cannot avail himself of the statute of limitations to an action for the recovery of funds held by virtue of the trust, unless the trust is openly denied to the knowledge of the cestui que trust."

At page 142 of the same volume, we find the statement:

"Where it is contended that the statute of limitations was set in motion by the repudiation of a trust, it is essential, in order that he may claim the benefit of the statute, for the trustee to show a plain, strong and unequivocal renunciation."

It is no answer to say that the beneficiary of a trust at will could terminate the trust by making an unequivocal demand. The persistent, unequivocal re-

fusal of such a demand would be a renunciation of the trust and would start the statute running. But until there is such a renunciation the possession of the trustee is the possession of the cestui, and this is patently so when the trust *res* is real estate. Indeed, Section 11236, General Code, in addition to exempting continuing and subsisting trusts, also exempts the dry passive trust of the legal title of a vendor in favor of a vendee in possession. 1 American Jurisprudence, 835, Section 72, where it is stated:

"Until the trust is openly repudiated, the cestui que trust may rely upon the integrity and faithfulness of his trustee without forfeiting his rights. Indeed, the trustee's possession of trust property is the possession of the cestui que trust, whether the trust be express or implied. That is, a trustee cannot set up a title adverse to his cestui que trust so long as the trust is acknowledged. It becomes adverse only from the time of known disavowal. And, of course, a trustee may disavow his trust. In case of such disavowal, however, there must be a positive and continued disclaimer of title, and an assertion of adverse right brought home to the party, before the statute of limitations operates."

For these reasons, we are of the opinion that the court erred in sustaining the demurrer to the second amended petition.

The judgment is reversed and the cause remanded for further proceedings.

*Judgment reversed.*

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., concur in the syllabus, opinion, and judgment.