**Tara C. TRENT, Executrix of the Estate of Patrick R. Collins, Deceased, Plaintiff–Appellee, Cross–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellant, Cross–Appellee.**

Nos. 88–3740, 88–3778.

United States Court of Appeals, Sixth Circuit.

Argued July 24, 1989.

Decided Jan. 11, 1990.

Rehearing Denied Feb. 21, 1990.

Burgess L. Doan (argued) and Marvin L. Martin, Cohen, Todd, Kite & Stanford, Matthew J. Lane, Cincinnati, Ohio, for plaintiff-appellee, cross-appellant.

Thomas R. Jones, U.S. Dept. of Justice, Tax Div., Washington, D.C., Nicholas J. Pantel, Asst. U.S. Atty., Cincinnati, Ohio, Gary R. Allen, Acting Chief, William S. Rose, Jane S. Kimball, Robert A. Bernstein, David I. Pincus, Linda E. Mosakowski (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for defendant-appellant, cross-appellee.

Before MERRITT, Chief Judge, NELSON, Circuit Judge, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Tara Collins Trent, executrix of the estate of Patrick R. Collins, who died in 1981, seeks a refund of $487,614.38 of federal estate taxes plus interest, which she contends was erroneously assessed and collected by the Internal Revenue Service. It is the contention of the executrix that the net taxable estate is less than is contended by the government because the estate is entitled to a larger alimony deduction than was allowed, or, alternatively, because it is entitled to exclude from the gross estate the interest of. the former wife of the deceased in certain real estate. The executrix sued in the district court for the Southern District of Ohio and was partially successful there; the district court, concluding that the estate was entitled to a larger alimony deduction than was allowed (though not as large as that claimed), granted her a refund judgment of $288,306.15 plus interest. Both the government and the executrix appealed. We conclude that the district court was in error in granting any relief to the

executrix, and therefore we reverse and remand to the district court with instruction to dismiss this action with prejudice.

I

A.

Patrick and his wife, Norma Jean Collins, who had been married since 1952, determined to dissolve their marriage. Represented by the same attorney, J.R. Nieberding, they obtained a decree of dissolution in the Common Pleas Court of Hamilton County, Ohio, on September 8, 1976; the decree incorporated a separation agreement, prepared by their attorney, dated July 27, 1976.

The separation agreement stated that the parties "mutually expressed a desire to settle and adjust all matters relating to their mutual property rights to which either might be entitled in the event of dissolution," stated that the separation agreement would be included in their petition for dissolution and, if granted, in the decree of dissolution of the marriage, and further stated that it was their intention "to make an equitable distribution of their property and to settle all claims thereunder."

The separation agreement provided for division of tangible personal property such as automobiles, motorcycles, furniture and furnishings, and for savings and checking accounts. It also provided that Patrick was to retain all of the stock in P.R. Collins Plumbing Co. and retain ownership of life insurance policies. With respect to real estate, Norma Jean received their home in Florida and Patrick received their home in Ohio. Of particular significance in this case was a provision that: "All other real estate now owned by the parties hereto, either individually or jointly, shall be transferred of record, to a trustee mutually agreed upon by the parties hereto for the use and benefit of Patrick." [1] Patrick assumed and agreed to pay all of their outstanding debts including mortgages on this real estate to be placed in trust. With respect to alimony, Patrick agreed to pay

Norma Jean $15,000.00 prior to entry of the decree and agreed to pay $13,000.00 per year in equal monthly installments unless she remarried, in which case this amount would be reduced to $10,400.00 per year, with adjustments based on the Consumer Price Index. Patrick also agreed to pay Norma Jean an additional $5000.00 every third year. Patrick received custody of their minor daughter, Tamara Lynn Collins; the other daughter, Tara C. Trent, who is executrix of the estate and plaintiff herein, was an adult. There was no provision for subsequent modification of the agreement.

After the execution of the separation agreement but prior to obtaining the dissolution decree, Patrick, Norma Jean and their attorney, Nieberding, as trustee, executed on September 3, 1976, the trust agreement contemplated by the separation agreement. The trust agreement recites that, pursuant to the separation agreement, Patrick and Norma Jean had executed and delivered to Nieberding, as trustee, "for the use and benefit of Patrick," general warranty deeds covering the real estate that is specifically described in the trust agreement. The trust agreement further provides that the trustee would hold title to this real estate "for the use and benefit of Patrick" and to secure payment of alimony as such is provided in the separation agreement. It still further provides that Patrick would be responsible for all debts and liabilities in connection with the real estate, that the trustee could not sell or mortgage the property without the consent of Patrick and Norma Jean and that the duties and obligations of the trustee would terminate with the death of Patrick or Norma Jean or by their agreement.

With Mr. Nieberding representing both parties, Patrick and Norma Jean obtained a dissolution of marriage decree on September 8, 1976, the separation agreement was adopted by the decree, and the parties were ordered to comply with the agreement.

After the entry of the decree, to wit on November 18, 1976, Patrick executed a will

---

**1.** It is Norma Jean's claimed retained interest in this property that, the executrix contends, should not have been included in the gross taxable estate.

prepared by Mr. Nieberding. In Item 2 of the will, it is stated:

At the time of making this, my Last Will and Testament, I am the owner of certain real estate which is held by my attorney J.R. Nieberding, as Trustee, pursuant to the Separation Agreement executed on July 27, 1976, by and between my former wife, Norma Jean Collins, and myself.... Under the provision of Item 7 B, C and D of that Separation Agreement, I am obligated to pay alimony to Norma Jean Collins for and during the term of her natural life. Therefore, if Norma Jean Collins is living at the time of my death and does not consent to a full and complete settlement of her alimony claim, then in that event, I direct that all of said real estate held by J.R. Nieberding, as Trustee, or any successor Trustee, shall be transferred to the Trustee hereinafter named for the uses and benefits and for the term hereinafter specified.

The will further provides that Patrick's daughter, Tara C. Trent, would succeed Nieberding as trustee. It empowers this trustee to sell trust property but only with the consent of Norma Jean. It further authorizes her, as trustee, to settle the alimony claim of her mother, Norma Jean, and also authorizes her to make the alimony payments to Norma Jean from the income of the trust with the balance of the income to be divided equally between the trustee, Tara C. Trent, and her sister, Tamara L. Collins. The will also provides that, upon the death of Norma Jean, the trust would terminate and the trust property was bequeathed to Tara C. Trent and to Tamara L. Collins.

### B.

After Patrick died in 1981 and his will admitted to probate, Norma Jean moved in common pleas court to modify the alimony provision in the dissolution decree. The two daughters did not oppose the motion and the government was not notified. The court thereupon, on April 27, 1982, entered a "modifying decree" in which the court found that at the time of the dissolution decree Patrick and Norma Jean were joint owners of the real estate that they had conveyed to Nieberding as trustee and that the "appraised value of said real estate is $2,993,750.00 and that Norma Jean Collins is entitled to alimony based on said valuation." The court further found that, prior to his death, Patrick had made alimony payments of $84,647.00 pursuant to the decree. The court thereupon modified the dissolution decree by awarding Norma Jean "the sum of $1,496,875.00 as and for her alimony as of September 8, 1976" less $84,647.00 that had been paid to her under the separation agreement, or a net amount of $1,412,228.00. In short, the court awarded Norma Jean alimony in gross in an amount equal to one-half the claimed value of real estate in the trust (without respect to mortgages), less the amount of alimony that had been paid to her.

Then, on April 30, 1982, the estate, by Nieberding, filed an estate tax return for Patrick's estate. The estate claimed a deduction for alimony owed to Norma Jean in the amount of $1,412,228.00. The estate did not, however, claim in the return that the real estate that had been conveyed to Nieberding as trustee and which Tara C. Trent had received as successor trustee had been jointly owned by Norma Jean and Patrick after they had placed the property in trust. In other words, the return did not show this property as being jointly owned by Patrick's estate and Norma Jean; it reflected that all of this property had been owned by Patrick at his death. In fact, the only jointly owned real property included in the return was property in Arizona valued at $3000.00.

The Internal Revenue Service determined that the estate was not entitled to an alimony deduction in an amount, as claimed, of $1,412,228.00. Instead, it determined that the estate was entitled to an alimony deduction of $273,190.00, which is the actuarial value of the alimony payments to be made to Norma Jean under the separation agreement following Patrick's death.[2]

2. The estate does not contest this computation of actuarial value.

Therefore, a deficiency of $487,624.38 was determined; the estate paid the deficiency and sued for a refund in the district court.

## II

### A.

In her complaint filed in district court, the executrix alleged that her mother, Norma Jean, had continued to own a half-interest in the property conveyed by her and Patrick to the trustee and that: "In order to avoid partition of the property, the Trustee sought to have the Court of Common Pleas determine the interest of Norma Jean Collins in the property and requested that the Court award her a sum certain in lieu of partitioning the property." The complaint further alleges that the common pleas court determined that Norma Jean "was entitled to the sum of $1,496,875.00 in lieu of her interest in the property less payments previously made of $84,647.00." The complaint further alleges that the Internal Revenue Service erred in disallowing a claim against the estate of $1,139,038.00 to the extent that it exceeded $273,190.00 (the actuarial value of the periodic payments). Thus the theory of the complaint is that, while Norma Jean had actually owned a half-interest in the real estate in the trust at the time of Patrick's death, this was the basis for the modification of the dissolution decree allowing Norma Jean lump sum alimony in the amount of $1,139,038.00. Therefore, consistent with the estate tax return, the complaint actually sought a refund by increasing the alimony deduction allowed as a claim against the estate under 26 U.S.C. § 2053(a)(3), not by a decrease in the gross estate as such is defined in 26 U.S.C. § 2033.

The case was tried in the district court on "what is contained in the files," including complaint, answer, pretrial orders, memoranda of law, exhibits, stipulations and depositions.

Contrary to the precise theory of the complaint, the estate really presented a double-barreled attack to the district court. The opinion of the district court states:

Plaintiff argues that the commissioner's decision to disallow as a deduction from the gross estate of Patrick Collins $1,412,228 pursuant to the modification of a divorce decree is incorrect for either of two reasons. First, the amount deducted represents the value of the property in the Collins Trust owned by Norma Jean and therefore not properly included in the gross estate of Patrick Collins pursuant to § 2033. Alternatively, plaintiff argues that the amount deducted constitutes a settlement of Norma Jean's claim against the estate for alimony, and is therefore a debt deductible from the gross estate pursuant to § 2053.

The district court expressed doubt as to the validity of the estate's first theory but agreed with the second theory, saying:

Plaintiff's first proposition is problematic, principally because the estate tax return does not list any property as being held jointly by Norma Jean and Patrick, except a lot in Arizona worth $3,000. However, we need not dwell on this issue because we conclude, for reasons discussed below, that the state court judgment modifying the consent decree did establish a viable debt for estate tax purposes, but a higher state court would hold it was mistaken as to the amount.

The district court determined that, contrary to the government's contention, the state court decree, modifying the dissolution decree, created a valid debt because the executrix was authorized to settle her mother's alimony claim and because she believed that her mother had an "enforceable claim for alimony in gross for $1,412,228.00."[3] The district court then determined that the state court's modifying decree was in accord with state law except that the amount of the alimony deduction claimed should be reduced by an amount

---

**3.** Inexplicably, however, while the district court apparently recognized that Norma Jean's claim, to be deductible as a valid debt, must be supported by adequate consideration, it determined that it was not so supported because Norma Jean had never executed a deed conveying her claimed interest in the trust property to the executrix.

equal to one-half the outstanding mortgages on the involved real estate; that is, that Norma Jean's interest that was the basis of the increased alimony claim was limited to her "equity" in the real estate in trust.[4]

In determining that, under Ohio law, the grant of the alimony in gross by the state court was proper, the district court relied on the proposition that Norma Jean, at the time of Patrick's death, owned a one-half interest in the real estate in the trust. In concluding that Norma Jean had such a retained interest, the court in part relied on the proposition that this was the intention of Norma Jean and Patrick. But the district court's opinion also concluded: "Thus, it is of no consequence whether Norma Jean technically [legally?] relinquished her interest in the trust property since Ohio law recognizes her interest in the property, on the basis of her rights as the former spouse of Patrick Collins." Thus, the district court actually determined that the award of the alimony in gross by the modification decree was in accord with Ohio law because, whether or not Norma Jean and Patrick had intended that she retain her interest in the real estate in trust, under Ohio law Norma Jean had such an interest "on the basis of her rights as the former spouse of Patrick Collins."[5]

The district court also held that the common pleas court retained jurisdiction to modify the alimony award.

The opinion of the district court concludes by holding that "the state court judgment awarding alimony in gross to Norma Jean Collins created a viable debt for federal estate tax purposes," but that the debt should be reduced because of the mortgages on the trust property.

Accordingly, while the opinion of the district court is not a model of clarity, it is completely clear that its holding is that the estate is entitled to an estate tax deduction based on the decree of the common pleas court in 1982, modifying its former decree of 1976. It determined that the modified decree created a valid indebtedness of the estate, reduced, however, by one-half the mortgages on the property.

### III

As has been stated, on appeal the estate claims that it is entitled to a refund of estate taxes because it is entitled to a deduction of a debt created by the grant of alimony in gross by the modifying decree of the common pleas court or, alternatively, because Norma Jean Collins owned, at the time of Patrick's death, a one-half interest in the realty that had been placed in trust and this interest must therefore be excluded from the gross estate.

### A.

The government contends that there are several reasons why the modified alimony decree did not create a deductible debt, citing *Ithaca Trust Co. v. United States*, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929) (the modified decree is a post-death event and therefore irrelevant) and *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (the modified decree was not grounded on an enforceable right under state law).

We conclude, however, that we need not resolve those contentions because the government is clearly right in its contention that the modified alimony decree was itself void under Ohio law. It was void because the common pleas court, under that law, was without jurisdiction to render the decree.

The Ohio Supreme Court decided just this question in *McClain v. McClain*, 15 Ohio St.3d 289, 473 N.E.2d 811 (Ohio 1984).

*McClain* distinguished between a decree of marital dissolution, in which the parties negotiate the amount of alimony, and divorce, in which the court decrees it. *See* Ohio Rev.Code Ann. § 3105.63 (1989). Be-

---

4. This decrease in the alimony deduction by the district court is the basis of the estate's appeal.

5. Nevertheless, the estate does not contend on appeal that Norma Jean would have had, "as the former spouse," a continuing interest in this real estate if she had effectively conveyed her interest when the trust was created.

cause marital dissolution requires the parties' consent, and because the terms of alimony payments may involve very delicate compromise, it follows that the court may not modify those terms. The statutory history, as the Ohio court pointed out, supports this interpretation. As enacted, § 3105.65(B) of the Ohio Code read, in pertinent part: "(B) * * * The court has full power to enforce its decree, and retains jurisdiction to modify all matters of custody, child support, visitation, *and periodic alimony payments.*" 135 Ohio Laws, Part II, 603, 616 (emphasis added). However, in 1975, one year before the Collins' marriage was dissolved, the legislature deleted the final clause referring to periodic alimony payments. The *McClain* court believed this modification deprived Ohio courts of jurisdiction to modify the amount of alimony payments in marital dissolution cases. The court stated: "Just as a court lacks authority to set the original amount of alimony payments in a dissolution case, a court also lacks authority to modify the amount of alimony payments originally agreed to by the parties." 473 N.E.2d 811, 813 (Ohio 1984).

Consequently, we believe that Norma Jean's claim against the estate for alimony would be the actuarial amount allowed by the government.

### B.

■ The estate also contends, as heretofore stated, that it is entitled to exclude from the gross estate for estate tax purposes Norma Jean's claimed one-half interest in the real estate that was placed in trust. This contention presents an anomalous situation in that the estate tax return—which has never been amended by the estate in this respect—shows this real estate as being the property solely of Patrick at the time of his death. That is to say, this property is listed and given valuation under "Schedule A—Real Estate" as being the property only of Patrick. The only realty listed on the return in "Sched-

ule E—Jointly Owned Property" is a lot in Mohave County, Arizona, valued at $3000.00, and Norma Jean is shown as having a "½ interest." Nevertheless, the government does not argue that the estate is thereby estopped as a matter of law to contend that Norma Jean owned a one-half interest in this real estate at the time of Patrick's death. The government does argue, however, that the estate's return of the property as having been solely that of the deceased is, at the least, evidence that it was his property. We agree. The estate is, after all, the party plaintiff here, not Norma Jean.

■ While Norma Jean testified in district court that it was her intent to retain a one-half interest in the property placed in trust,[6] the documents executed by the parties at or about the time the property was conveyed by Patrick and Norma Jean to the trustee demonstrate beyond doubt that Norma Jean retained only a security interest to guarantee payment of her alimony payments. It is, of course, the intent of the parties to the transaction that controls the result. *Central Trust Co. v. Bovey*, 25 Ohio St.2d 187, 267 N.E.2d 427, 429 (Ohio 1971).

The trust instrument provides, as the separation agreement provides, that the property was to be held by the trustee "for the use and benefit of Patrick" and to secure the payment of alimony to Norma Jean. Further, Patrick assumed all debt and liabilities with respect to the trust property. While the property could only be sold with the consent of Norma Jean, this is consistent with her security interest. Moreover, if Norma Jean had continued to own a one-half interest in the trust property, it would have been somewhat incongruous to provide, as it was provided in the separation agreement, that her alimony would substantially decrease upon remarriage.

Patrick's will, prepared by their attorney and executed shortly after the dissolution of the marriage, states that "I am the

---

**6.** The government argues that Norma Jean's testimony is, in effect, a *post hoc* rationalization. Cf. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

owner of certain real estate which is held by my attorney, J.R. Nieberding, pursuant to the Separation Agreement...." The will further provides that the trustee of the property can settle Norma Jean's alimony claim and that, if Norma Jean declines to settle, the trust would continue with Tara C. Trent as trustee. The will further provides that, upon the termination of the trust either by Norma Jean's settlement of her alimony claim or her death, the entire trust property was devised to their two daughters. In short, the will makes clear that Norma Jean would either receive a settlement of her alimony claim or the periodic payments provided in the settlement agreement until her death, after which the trust property would devolve to the two daughters. There is no indication in the will that any part of the trust property belonged to or would revert to Norma Jean.

Under these circumstances, we believe that a determination by the district court, if it had made such a determination, that Norma Jean owned one-half of the trust property (subject to the mortgages) at the time of Patrick's death and that therefore such interest of Norma Jean should be excluded from the gross estate, would have been clearly erroneous.

## IV

Accordingly, we find and determine that the executrix of the estate of Patrick R. Collins is not entitled to a refund of estate taxes paid, and therefore the decision of the district court is REVERSED and the cause is REMANDED for dismissal.

DAVID A. NELSON, Circuit Judge, dissenting.

It seems to me unlikely that the courts of Ohio would deny Norma Jean Collins a reversionary interest (or what would amount to a reversionary interest) in the nearly three million dollars' worth of jointly owned real estate, acquired during coverture, that she and Patrick Collins placed in trust upon the dissolution of their marriage. From the standpoint of an Ohio common pleas court judge, elected by the voters to exercise all of the powers of a court of equity, I am persuaded that the case hypothetically presented by Mrs. Collins would look very appealing indeed.

Here we have an obviously unsophisticated woman, married at the age of 18, who worked at her husband's side year after year in the family plumbing and construction business. The business evidently prospered. Norma Jean Collins contributed to the success of the enterprise, and she shared in the fruits of that success: "I worked as hard as he did," she testified, "and we owned everything 50/50." Nothing in the record suggests that this testimony was not entirely credible.

When, after nearly a quarter of a century of marriage, the couple decided to go their separate ways, they consulted Attorney J.R. Nieberding, who had represented Patrick Collins in business and other matters for more than a decade. It was Patrick who had been the client, not Norma Jean, and Attorney Nieberding quite properly advised Mrs. Collins to seek other counsel. She chose not to do so. Nieberding then agreed to represent both parties in drafting a separation agreement.

The agreement was intended, as its purpose clause recites, "to make an *equitable* distribution of their property...." (emphasis supplied). Their property included the real estate (basically construction, office and warehouse property) that the couple had acquired in Hamilton County, Ohio, during the 1960s and 70s. It has been stipulated by the litigants in the present lawsuit that the property was "jointly owned." This stipulation was accepted as accurate by the district court, and its accuracy is borne out by the deposition of Norma Jean Collins. "It was half my property too," she testified, going on to explain that:

"My name was on the deeds; my name was on the mortgages. It was half mine; it was never all his."

Although the deeds to most of the properties (ten in number, by my count) named as grantees "Patrick R. Collins and Norma Jean Collins," or "Patrick R. Collins and Norma Jean Collins, husband and wife," or "Norma Jean Collins and Patrick R. Col-

lins, husband and wife," there were two deeds in which Mrs. Collins' name did not appear. But the district judge (the late David S. Porter, an experienced and capable Ohio jurist) dismissed this omission as insignificant. Under Ohio law, Judge Porter declared in denying a government motion to reopen the case, "Norma Jean Collins had an equitable interest in all property that came to the couple during their marriage, whether or not her name appears on the deed." The conclusion that Mrs. Collins had at least an equitable interest in half of the real estate has not been seriously challenged by the government—and eight of the deeds gave her a legal interest as well.

Pursuant to the separation agreement drafted by Attorney Nieberding, Mr. and Mrs. Collins executed general warranty deeds conveying legal title in the real estate to Mr. Nieberding as trustee. Under a separate trust agreement, also drawn by Mr. Nieberding, Norma Jean Collins surrendered at least a portion of her equitable interest in the properties. She received, in exchange, certain household furnishings, a Florida savings and loan account, a Chevrolet automobile, three motorcycles, a house in Florida, a hold-harmless agreement on the couple's outstanding indebtedness, a lump sum payment of $15,000, and the promise of lifetime alimony payments of at least $10,400 per annum (subject to an annual cost-of-living adjustment), plus an additional payment of $5,000 every third year for the rest of her life.

The fairness of this arrangement need not concern us; whether she acted wisely or not, Norma Jean Collins made the deal she made—and it is perfectly clear that for the joint lives of herself and Patrick Collins, at least, she gave up all of her equitable estate in the Hamilton County property except for a security interest designed to ensure that the alimony would be paid in accordance with the agreement. (The record shows, by the way, that the alimony was so paid.)

The critical question is not where equitable title lay during the period when both Patrick and Norma Jean Collins re-

mained alive. During the balance of the couple's joint lives, equitable title clearly lay with Patrick. Both the separation agreement and the trust agreement said so; under both instruments, the property was to be held by the trustee "for the use and benefit of Patrick." But the trust agreement provided that upon the death of either Patrick or Norma Jean, the duties and obligations of the trustee would *terminate*— and the critical question facing District Judge Porter was what happened to the property upon the *termination* of the trust. That is a matter the trust agreement does not address; neither does the separation agreement.

The mere fact that the property had been held for the use and benefit of Patrick for the duration of the trust does not suggest to me that the parties intended the entire beneficial interest to pass to Patrick's estate upon termination of the trust by reason of Patrick's death. The phrase "for the use and benefit of Patrick" presumably means what it says—and it does not say that the trustee is to hold the property for the use and benefit of Patrick's estate after Patrick himself can have no further use for the property. The phrase obviously does not say, moreover, that the trustee has a continuing duty to hold the property for the use and benefit of Patrick's estate notwithstanding the express termination of the trustee's duties and obligations. As Judge Porter declared, citing *Homer v. Wullenweber*, 89 Ohio App. 255, 101 N.E.2d 229 (Hamilton 1951), the phrase in question "does not provide indication of where the property is to go upon the termination of the trust."

It is my view that an Ohio court of equity, mindful of the fact that Norma Jean Collins owned a one-half interest in the property before she signed the deeds conveying the land to Mr. Nieberding as trustee, would have little difficulty in deciding on the correct disposition of the property once the trust has terminated. Judge Porter, at least, was very clear on this. Citing, among other authorities, *Lillard v. Lillard*, 63 Ohio App. 403, 26 N.E.2d 933 (Hamilton 1939)—another decision from the court of appeals for the very county in

which the real estate is located—Judge Porter noted that on termination "the trustee holds the principal of the trust for the settlor...." (Upon termination of the trust, "every title created by the trust instrument is destroyed and the title of the trustor freed of every such title." *Lillard,* 63 Ohio App. at 412, 26 N.E.2d at 937.) And, Judge Porter continued, "Norma Jean, as joint owner of the properties transferred to the trustee[,] is a settlor [or "trustor"] and therefore is entitled to her share...." This is exactly right, in my opinion.

Attorney Nieberding may have lost sight of Norma Jean's potential interest when, several months after the execution of the separation agreement, he came to draw Patrick Collins' will. The will purports to give the Collins' two daughters not only Patrick's beneficial interest, but Norma Jean's beneficial interest as well. As Judge Porter recognized in denying the government's motion to reopen the case, however, the mistake in Patrick Collins' will can hardly be deemed controlling:

"... we remain unconvinced that Norma was not half-owner of the property in the trust. We find wholly unpersuasive the language the government cites from the will indicating Patrick Collins *believed* he owned all the property in the trust (Doc. 20 at 7). Collins' belief is uncontrolling on the legal question of Norma Jean's interest in the property." (Memorandum and order of April 28, 1987; emphasis in original.)

Mistakes strikingly similar to that made by Patrick Collins were made by the settlor in *Lillard.* The Hamilton County Court of Appeals said of them that "these subsequent acts and declarations are not effective to directly disturb the irrevocable trust ... or to indirectly do so by influencing an interpretation of its terms contrary to the words used in the circumstances then existing." 63 Ohio App. at 405, 26 N.E.2d at 934.

Even if it were enforceable, the mistake in Patrick Collins' will might make little difference, as a practical matter, aside from whatever bearing it has on the interpretation of the trust agreement. Norma Jean Collins, as her deposition makes clear, was not estranged from her children. Her marriage was dissolved, but her family was not. Norma Jean did not remarry, and within 18 months she went back to work at the family business on a full-time basis, doing the bookkeeping for the plumbing side while her younger daughter handled the books for the construction side. (This arrangement continued until Patrick Collins' sudden death from a stroke several years later.) We know that at least one will was prepared for Norma Jean Collins after the dissolution of her marriage. We do not know the will's terms, unfortunately, but we do know who drafted it—Attorney Nieberding. If the will that he drew for Norma Jean Collins followed the same pattern as the will that he drew for Patrick Collins, the two daughters would ultimately take the real estate in any event—and tax considerations aside, it probably would matter little to the daughters whether they ultimately took all of the real estate under their father's will, or half under their father's and half under their mother's. In neither eventuality would the daughters have full enjoyment of the property until both parents were dead—for Patrick's will provided that in the absence of a complete settlement with Norma Jean, all of the property would be held in a testamentary trust to secure payment of the alimony to which Norma Jean was entitled for life. Only such income from the property as might exceed Norma Jean's adjusted alimony payments would go to the daughters during their mother's life.

Turning to the proceeding in which the Hamilton County Court of Common Pleas purported to "modify" the decree by which the marriage was dissolved, I find it interesting that the daughters appeared in that proceeding, that they were represented by counsel, and that they interposed no objection to the modification. Perhaps they would not have been so accommodating had they not known that they stood to take their mother's half interest upon the mother's death.

Be that as it may, I agree with the panel majority that notwithstanding the incorporation of the Collins' separation agreement in the original decree of dissolution, it was beyond the power of an Ohio court to modify the separation agreement. Where the separation agreement and trust agreement were silent, however—as they were on the question of what happened to the real estate upon termination of the trust—it would obviously not be beyond the power of an Ohio court to speak. And I read the modification decree as providing a rather clear indication of what an Ohio court would say on that score; it would say that when the trust terminated, the property would have to be returned to the settlors or their testamentary representatives.

In addition to conforming to well established precedent, such a holding would work to the advantage of a lady who typifies the sort of person whose interests chancellors have always been solicitous to protect. Norma Jean Collins, to repeat, is an unsophisticated woman who, despite her substantial means, undertook to negotiate the separation and trust agreements without any legal advice beyond that provided by her adversary's lawyer. If an Ohio chancellor were called upon to resolve any ambiguity as to what the instruments so negotiated actually said—and what they did not say—it is inconceivable to me that the character of the woman, and the circumstances under which the woman was acting, would be ignored. I daresay such a notion would have been equally inconceivable to Judge Porter.

I agree with Judge Porter, finally, on his treatment of the mortgages that Mr. and Mrs. Collins placed on their real estate before putting the real estate in trust. The property was still mortgaged when the trust terminated, and the value of what Norma Jean Collins got back upon the termination of the trust could not have exceeded the value of the equity of redemption in her half of the trust property. (I might quibble with Judge Porter about the deduction he made in respect of alimony paid prior to Patrick's death, but no one has made an issue of that.) Although I do not agree with Judge Porter's reasoning in its entirety, I think the result he reached was essentially correct. I would affirm the judgment.