OPINION
Appellants, Candice Stokes, Thomas H. Rose, and Linda Rose-Hogg, appeal from the judgment of the Lake County Court of Common Pleas, which granted summary judgment in favor of appellee, Joseph G. Berick. For the reasons that follow, we affirm the judgment of the trial court.
Briefly, the following pertinent facts were gleaned from the record. Appellants are the beneficiaries of a trust established by their father, John J. Rose ("Rose"), prior to his death in 1979.[1] They are all siblings. Appellee is one of the originally named trustees. He was Rose's personal and corporate counsel. Prior to his death, Rose transferred his interest in several corporations to the trust. The corporations were in the business of storing, distributing and marketing propane.
In February 1996, appellants filed suit against appellee, voluntarily dismissed the suit and reinstituted substantially the same suit in September 1996. The complaint contained allegations, in pertinent part, of fraud, conversion of trust assets, and breach of fiduciary duty. Appellants sought damages, an accounting and declaratory relief.
Appellants' central complaints revolved around a transaction in which appellee acquired fifty-percent ownership of a corporation called the Nacelle Land Management Corporation ("Nacelle") in 1983 or 1984. This corporation was established by appellee prior to that time as part of his handling of the trust corporations.
Although appellants knew that appellee intended to acquire a fifty-percent interest in Nacelle at the time he did so, they claimed that appellee did not fully inform them of the reasons and justifications for acquiring the stock. They also claimed that appellee failed to have an independent appraisal undertaken to value the stock.
In short, appellants' remaining claims allege that once he acquired ownership of half of the Nacelle's stock, appellee engaged in self-dealing which benefited Nacelle, and thus himself. They further alleged that appellee caused Nacelle and the other trust corporations to engage in transactions with other companies in which either appellee or one of his family members had a personal interest. The complaint also alleged that appellee caused the trust corporations to be cited and found liable for numerous environmental violations. Finally, the complaint alleged that appellee failed to keep adequate records and failed to account to the beneficiaries.
The complaint alleged that appellants became aware of appellee's wrongdoing in 1992. Appellee moved for summary judgment on the grounds that appellants' claims were barred by the four-year statute of limitations contained in R.C. 2305.09. According to appellee, the statute began to run when appellants had reason to know of the facts that formed the basis of their 1996 complaint. Appellee attached two letters from appellants Thomas H. Rose and Candice Stokes that were sent to appellee in 1988. In these letters, both appellants accuse appellee of mismanaging funds and converting trust assets for his own personal gain.
Appellants responded to the motion, in part, with excerpts of appellants' deposition testimony and a letter dated January 10, 1989 from appellee's partner, Osborne Mills ("Mills"). According to appellants, they decided they had no reason to pursue the allegations contained in their letters of 1988 because Mills responded in appellee's behalf and assured them that appellee had not wrongfully converted trust property or otherwise violated his fiduciary duties as trustee.[2]
The trial court ultimately granted appellee's motion for summary judgment and appellants perfected a timely appeal, asserting one assignment of error:
 "The Trial Court Erred in Granting Defendant's Summary Judgment Motion On The Basis Of The Statute Of Limitations (Judgment Entry)[.]"
In their lone assignment of error, appellants challenge the trial court's decision to grant summary judgment in appellee's favor on the basis that the statute of limitations on their claims had expired. In this regard, the trial court held that appellants' breach of fiduciary duty/breach of trust claim accrued when they became aware that their interests were impaired by appellee's conduct. The court dealt with appellants' fraud and conversion claims separately, holding that these claims accrued when they discovered facts that obligated them to make further inquiry into appellee's handling of the trust.
Here, the court concluded that the two 1988 letters evidenced appellants' notice that their interests were impaired and that they needed to conduct further investigation. Consequently, the court held that the statute of limitations began to run on all of appellants' claims in 1988. The court thereafter held that their complaint of September 1996 was filed beyond the four-year statute of limitations period governing their claims. See R.C. 2305.09.
Appellants' central contention below and on appeal was that the limitation period for their breach of trust claim only began to run on the termination of the trust relationship, or when the beneficiaries of the trust discovered the breach, whichever occurred later. Appellants contend that the law in this regard is very similar to the rule in cases involving attorney-client relationships, or at least that it should be.
Appellants further argue that their complaint alleged an on-going breach of trust and that the trial court erred by ruling that the complaint failed to allege wrongdoing in the four years prior to the institution of suit in February 1996. Appellants also maintain that genuine issues of fact existed as to whether the 1988 letters showed that appellants knew their interests were impaired and whether they reasonably relied on the letter from appellee's partner, Mills, to justify their decision not to pursue the matter in early 1989.
As to appellants' first claim that the instant case is governed by the same rules that apply in legal malpractice cases, we disagree. In the case of alleged legal malpractice, the general rule is that the limitation period on the client's cause of action begins to run when the client discovers, or should have reasonably discovered, that his injury was related to his attorney's conduct, or when the attorney-client relationship terminates, whichever occurs later. Zimmie v. Calfee, Halter and Griswold (1989),43 Ohio St.3d 54, syllabus.
In the case of an alleged breach of trust or breach of fiduciary duty claim, however, different rules apply. R.C.2305.22 provides that "continuing and subsisting" express trusts, such as the one in the case at bar, are exempt from the application of the four-year statute of limitations contained in R.C. 2305.09. The statute reads, in pertinent part: "Sections2305.03. to 2305.21VENICE * * * of the Revised Code, respecting lapse of time as a bar to suit, do not apply in the case of a continuing and subsisting trust * * *." R.C. 2305.22.
In reference to Ohio's R.C. 2305.22 and similar authorities, Professor George G. Bogert noted that the statute represents "an ambiguous statement which needs explanation." Bogert, The Law of Trusts and Trustees (2 Ed.Rev. 1995) 626, Section 951. Professor Bogert thereafter explained:
 "These general statements about the inapplicability of the Statute of Limitations to express trusts do not mean that a cause of action for breach of such a trust is never barred by lapse of time, but rather that though the trust is being respected by the trustee there is no cause of action in favor of the beneficiary and hence the Statute of Limitations does not commence to run. Thus if a trust has been in operation for forty years and the trustee has been performing his duties, he cannot defend against future performance on the ground that his obligation under the trust is forty years old and therefore barred by some Statute of Limitations. The length of the time since he assumed the trust is not material. The only question of importance is, how long is it since he violated the trust?" (Emphasis added.) Bogert, at 627.
The Supreme Court of Ohio similarly described the purpose and intent of R.C. 2305.22:
 "The rule developed by equity courts was that in suits between a cestui que trust and a trustee for the enforcement of a trust that was a continuing technical trust not recognized at law but within the proper, peculiar and exclusive jurisdiction of equity, where the trust was being respected by the trustee no statute of limitation could be interposed by the trustee as a defense. * * *
 "The reason why such a rule was developed by equity courts and its incorporation into the Code of Civil Procedure wherein statutes of limitation were made applicable to all actions, whether formerly legal or equitable * * * is perceivable when consideration is given to the nature of the technical trust cognizable solely in equity.
 "`A trust is the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another.' Ulmer v. Fulton (1935), 129 Ohio St. 323, 339. The holding and possession of the legal title by the trustee is the holding and possession of the cestui que trust. Until the trustee repudiates his trust obligation, to the knowledge of the cestui que trust, no cause of action exists against which a statute of limitation could operate." (Citations omitted.) Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 168.
Thus, the rule developed that a cause of action only arose when the trustee disclaimed or repudiated his trust obligation such that the beneficiary had reason to know that the trustee's holding was adverse to the interests of the beneficiary. Id. at 169. Professor Bogert describes the parameters of the rule as follows:
 "If the trustee violates one or more of his obligations to the beneficiary, or by words or other conduct denies that there is a trust and claims the trust property as his own, there obviously is a cause of action in favor of the beneficiary and any relevant Statute of Limitations will apply from the date when the beneficiary knew of the breach or repudiation, or by the exercise of reasonable skill and diligence, could have learned of it."
 "If the beneficiary does not learn of the breach or repudiation because the trustee, by fraud, concealment, or other wrongful conduct keeps the beneficiary in ignorance of the situation, clearly the Statute of Limitations should not run." (Footnotes omitted.) Bogert at 630-635.
As for what evidence is needed in Ohio to commence the statute of limitations during the life of a trust, there must be some "`plain, strong, and unequivocal'" act or renunciation on the part of the trustee before the statute of limitations will run. (Citation omitted.) Homer v. Wullenweber (1951),89 Ohio App. 255, 264. In this context, a plain, strong and unequivocal renunciation may not exist when a beneficiary makes a demand that trust property be returned to her, but later withdraws the demand after the trustee continued to acknowledge the trust and offered an explanation for his dealings with the trust property. Thus, Homer stands for the proposition that the mere fact that the beneficiary made a demand of the trustee does not automatically establish that the statute of limitations will begin to run from that date.
Professor Bogert further describes instances in which a trustee may demonstrate a repudiation of the trust, such as when the trustee declines to account to the beneficiary, takes trust income for his own purposes, or sets himself up as the owner of the trust principal. Bogert at 638-639. Nevertheless, each situation must be examined individually, and the issue of whether a given act is consistent with the continuance of the trust, or indicates an intent to repudiate the trust and claim adversely, is a question of fact. Bogert at 639-642.
In the case at bar, appellants argue that the trust in question is subject to R.C. 2305.22 because it is a continuing and subsisting trust. Appellants support this argument by claiming that their cause of action is cognizable solely in equity because the historic trustee-beneficiary relationship is based in equity. As a result, appellants believe that the trial court erred in applying R.C. 2305.09 when finding that their various causes of action were barred by the four-year statute of limitations. We disagree.
In their complaint, appellants essentially seek legal remedies for the alleged misconduct of appellee.[3] While appellants classify their complaint as an action for a breach of trust, in actuality, appellants' claims involve issues of conversion, fraud, and breach of fiduciary duty. This distinction is important because when determining the applicable statute of limitations for a given case, it is necessary to look to the "essential character" of a plaintiff's claim. Doe v. First United Methodist Church
(1994), 68 Ohio St.3d 531, 536. Moreover, "if the primary or paramount relief sought is legal and the equitable redress merely incidental, it is an action at law." State ex rel. Lien v. House
(1944), 144 Ohio St. 238, 246-247. Consequently, we determine that the "essential character" of appellants' claims were legal in nature, and as a result, R.C. 2305.09 controls.
Since we conclude that appellants' claims were subject to R.C.2305.09, we now must determine whether appellants filed their suit within the four-year statute of limitations. Legal claims for fraud, conversion, and breach of fiduciary duty, which can be brought prior to the termination of the trust, are barred by the statute of limitations if not timely filed. Paschall v. Hinderer
(1876), 28 Ohio St. 568, 576. A cause of action for fraud or conversion accrues either when the fraud is discovered, or in the exercise of reasonable diligence, the fraud should have been discovered. Investors REIT One v. Jacobs (1989), 46 Ohio St.3d 176, paragraph 2b of the syllabus; Burr v. Stark Cty. Bd. ofCommrs. (1986), 23 Ohio St.3d 69, 76. When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known "` would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry * * *.'" Hambleton v. R.G.Barry Corp., (1984), 12 Ohio St.3d 179, 181, quoting Schofield v.Cleveland Trust Co. (1948), 149 Ohio St. 133, 142.
A claim for breach of fiduciary duty, however, accrues when the claimant's interest is impaired by such a breach. In addition, the discovery rule in R.C. 2305.09(D) does not apply to toll the statute of limitations for claims arising out of a breach of fiduciary duty. Herbert v. Banc One Brokerage Corp. (1994),93 Ohio App.3d 271, 275.
Applying the foregoing to the case at bar, we conclude that the trial court did not err in applying the statute of limitations to bar appellants' suit on the breach of trust/fiduciary duty claim.[4] As a result, the trial court properly granted appellee's motion for summary judgment because appellants' 1988 letters evidence that they were put on notice that there may be a problem with appellee's management of the trust.[5]
Appellants' letters of 1988 can be seen as a demand for the return of trust property which they believe appellee wrongfully converted for his own personal benefit.[6] The letters can also be taken as actual, constructive notice that appellants knew that appellee had renounced the trust and was holding the trust property adversely to their interests. Furthermore, it can be argued that appellee's failure to respond personally to the letters accusing him of self-dealing evidenced his intent to renounce the trusteeship. These factors would indicate that the statute of limitations began to run in 1988.
Moreover, when reading the letters received by appellee, it is clear that appellants were accusing appellee of acts which form the basis of appellants' claims for fraud, conversion, and breach of fiduciary duty. For example, the letter sent by appellant Thomas Rose states in pertinent part:
 "The former Lake Underground property is now nothing but a burial ground for companies all started in one way or another with Trust assets or the use of Trust assets.
"* * *
 "It has been nearly 10 years since the Trust came into being. In that period it has paid, I am sure, an enormous amount of legal fees to Burke Haber and Berick and to your new firm. We have never been told the actual cost of legal fees. In addition, you now own 50% of Nacelle, if my letters from you are correct.
"* * *
 "In its intent, the Trust was formed to dispose of the estate assets in an orderly fashion, not to create an entire new set of corporations for the Trustees.
 "It is time we stop all of this and proceed to liquidate the final assets remaining and close the whole thing.
 "It is my suggestion that you go back to the practice of law and proceed at once to separate our assets from yours to avoid any further conflict of interest and prevent the possibility of the Joe Rose Trust Assets eventually being entangled in your own estate.
 "I an forwarding copies of this letter to Joan and my brother and sisters. I suggest we proceed to have a meeting with all of us to determine the future direction and finalizing of the estate before our vested interest is further diluted."
After receiving Thomas Rose's letter, appellant Candice Stokes wrote appellee and voiced her concerns over the management of the trust. She wrote, in part:
 "My fathers' [sic] estate, or what, if anything, is left of it, appears to belong to Joe Berick and Dean Stutzman. Each and every year since my fathers' [sic] death, his assets have been slowly taken from his wife and family and neatly distributed and changed into the names of the people who were to settle his estate. This is even obvious to a `dumb farm girl' like me.
 "As you undoubtedly know, Joan and my family have not been exactly loving friends; but this does not excuse the fact that you omit all of us from what is happening in the estate, until you have made YOUR decisions, charged your fees, and then TOLD us what has happened.
"* * *
 "Thank you for all of the paper; am sorry that so little of it makes sense to me. I can't even tell an outsider what I own and don't own, because I don't know myself."
Even a cursory review of these letters gives the impression that appellants should have exercised reasonable diligence in further investigating the situation. There is no question that, at the time the letters were written, appellants were concerned that their interest in the trust was being possibly impaired by appellee's actions. This concern was sufficient to require that appellants use ordinary care and thoughtfulness to make further inquiries as to the management of the trust. Even viewing the letters in a light most favorable to appellants, there is no question that appellants accused appellee of breach of trust and/or breach of fiduciary duty in 1988. The letters contained various allegations of wrongful conversion, failure to account, and self-dealing. Furthermore, assuming appellants' allegations as true, appellee's actions rise to the level of a repudiation of his duties as trustee, making R.C. 2305.09 applicable. Bogert at 634-637.
Appellants next argue that the letter sent by Osbourne Mills tolled the running of the statute of limitations because they effectively withdrew their demand after they received the letter from Mills explaining how appellee had performed as well as to be expected given the market and financial conditions of the trust corporations. According to appellants, even if the letters can be construed as notice of the claims, Mills' letter is a fraudulent misrepresentation which induced appellants to abstain from further investigation of their claims. We disagree.
While the statute of limitations may be tolled based on fraudulent misrepresentations of the opposing party, appellants admitted that Mills' letter was fundamentally accurate and that they did not rely on the letter for any purpose. Because this is the only basis for appellants' argument of fraudulent misrepresentation, it must fail.
For example, during his deposition, Thomas Rose testified that the information contained in Mills' letter was accurate to the best of his knowledge. In addition, Candice Stokes testified in her deposition that, at the time the suit was filed in February 1996, she still had no reason to suspect that the information in Mills' letter was inaccurate. As a result, appellants provided no evidence that they chose not to file suit until they learned the content of the letter was false and/or misleading. In other words, they filed suit despite their belief that the letter was accurate. Thus, knowledge of any inaccuracies in the letter did not precipitate the suit. Further, if Mills' letter may have been the reason they did not pursue their claims, there was no showing it misled them; nor is there a showing they should have reasonably relied upon it to cease their investigations. "`Once sufficient indicia of fraud are shown, a party cannot rely on its unawareness or the efforts of the opposition to lull it into a false security to toll the statute.'" Aluminum Line Products Co. v. Brad SmithRoofing Co., Inc. (1996), 109 Ohio App.3d 246, 260, quoting AuRustproofing Ctr. v. Gulf Oil Corp. (C.A. 6, 1985), 755 F.2d 1231,1237.
We conclude that the trial court did not err by granting summary judgment in favor of appellee. No genuine issue of material fact needed to be litigated in the case at bar. Given the operation of R.C. 2305.09, appellee was entitled to judgment as a matter of law.
Based on the foregoing analysis, appellants' assignment of error is without merit. Accordingly, the judgment of the trial court is affirmed.
FORD, P.J., concurs,
O'NEILL, J., dissents.
[1] Another of appellant's siblings and their step-mother were additional beneficiaries of the trust. However, they were not participants in the proceedings below.
[2] Both parties seemed content below to rest on the knowledge or lack thereof of appellants Thomas H. Rose and Candice Stokes, as opposed to getting into the issue of whether appellant Linda Rose-Hogg had similar reason to investigate appellee in 1988. However, at least one of the two letters of 1988 indicated that appellant Linda Rose-Hogg received a copy of the same.
[3] We would like to note that that appellants were also seeking an accounting, a declaratory judgment, and the imposition of a constructive trust.
[4] Our reading of appellants' brief reveals that they are only challenging the application of the statute of limitations to their breach of trust claim, and not to their fraud and conversion claims to the extent that those were brought as separate claims.
[5] In addition to the letters, two of the appellants actually toured one of the plant's under the trust's control. After finding the grounds run down, appellant complained to appellee about the management of the plant.
[6] Appellants acknowledged below that they were aware of the fact that appellee personally obtained fifty percent of the stock in Nacelle. They did not allege that it was inherently wrong for appellee personally to obtain stock in a trust corporation. Instead, their allegations of wrongdoing went to the issue of the amount he paid for the stock and the circumstances surrounding the acquisition. Thus, the mere fact that appellee was holding personal title to what was formerly trust property would not indicate that appellee wrongfully took title to trust property in the case at bar.