DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiffs-appellants, Beverly Ann Jones, Thomas B. Elsea, Jaynee E. Darfus, and Richard R. Elsea, appeal from a judgment of the Pickaway County Common Pleas Court, Probate Division, awarding them $19,744.37 on their claims for a judicial accounting, tracing of trust assets and the imposition of a constructive trust, and a declaration of trust assets against defendants-appellees, the estate of Maxine L. Elsea, Elsea, Inc., and Asa J. Elsea.
 {¶ 2} This matter, which is now before this court for the second time, has a lengthy and complicated history. On May 1, 1944, the will of Jacob Barthelmas was probated in Pickaway County, Ohio. One of the provisions of the will placed a parcel of real property known as the Betts Farm in trust as follows:
I give and devise the 280 acre farm known as the George Betts farm located in Deercreek Township, Pickaway County Ohio To William Barthelmas and Maxine Elsea as tenants in common for and during their natural lives, with the privilege of either selling his or her life estate to the other: They may control and manage the farm as tenants in Common as long as they hold same together [sic]: At the death of William Barthelmas or Maxine Elsea his or her part of said farm is to pass to his or her living children in fee simple, with the further provision that if any child or children of either be dead at the time of the death of the parent and such child or children leaving a child or children such child or children shall take its parent share.
 {¶ 3} On April 1, 1952, William Barthelmas and Maxine Elsea filed case No. 20661 in the Pickaway County Court of Common Pleas seeking the authority to sell the entailed Betts Farm. At this proceeding, the minor remaindermen of the trust, Beverley Ann Jones, Thomas Elsea, Richard Elsea, and Jayne Elsea Darfus, appellants herein, and Asa J. Elsea, appellee herein, were represented by guardians ad litem. On October 27, 1952, the Pickaway County Court of Common Pleas approved the sale of the Betts Farm and named Maxine Elsea trustee of her one-half life estate interest in the proceeds of the sale and William Barthelmas trustee of his one-half life estate interest in the proceeds. The court then directed each trustee to invest their respective $19,744.37 shares of the sale proceeds in accordance with applicable law and to report all proposed investments to the court for approval.[1] The parties all agree that this proceeding was proper.
 {¶ 4} On December 2, 1952, Maxine Elsea opened a trust checking account at the Third National Bank of Circleville into which she deposited the entire $19,744.37 trust corpus. On December 10, 1952, Maxine Elsea filed an application with the Pickaway County Court of Common Pleas for permission to loan a portion of the trust proceeds to herself and her husband, Robert Elsea, for the purchase of a parcel of real estate owned by Robert Elsea's parents and known as Elsea Farm. Later that day, the court entered an order instructing Maxine Elsea to invest the trust funds in "notes secured by a first mortgage on certain real estate known as the Elsea Farm" and to report on the investment.
 {¶ 5} On February 7, 1953, Maxine Elsea filed a report with the Pickaway County Court of Common Pleas indicating that she had invested $16,000 of the trust corpus in notes secured by a first mortgage on the Elsea Farm. The court approved the investment by an entry filed later that same day. The trial court found that Maxine Elsea did in fact invest $16,000 of the trust corpus in a 20 year non-interest bearing note secured by a first mortgage on Elsea Farm. On September 14, 1970, Maxine Elsea released the mortgage on Elsea Farm. No evidence appears in the record regarding whether the note was actually repaid.
 {¶ 6} Between March 13, 1953 and April 6, 1954, Maxine Elsea wrote 13 checks totaling $3,773.69 on the trust account without court approval. These checks together with $.68 in bank fees reduced the account balance to $0. The account was closed on April 6, 1954.
 {¶ 7} On May 18, 1996, Maxine Elsea died, and appellee, Asa Elsea, was appointed executor of her estate. Prior to their deaths, Maxine and Robert Elsea had transferred their interest in all but a 1.248-acre parcel of Elsea Farm to the corporate entity Elsea, Inc. Upon Maxine Elsea's death, all of the stock in Elsea, Inc. and the remaining 1.248 acres of the original tract were inherited by Asa Elsea.
 {¶ 8} On May 9, 1997, appellants filed a claim against the estate of Maxine Elsea seeking the imposition of a constructive trust on all assets obtained by Maxine Elsea through the use of the assets of the trust established by the court order of December 10, 1952. The estate rejected appellants' claim and the present litigation was commenced on July 18, 1997. In their complaint, appellants sought to impose a constructive trust containing all assets into which the original $19,744.37 could be traced, including Elsea Farm and the stock of Elsea, Inc. Throughout this litigation, the real dispute has centered on whether appellants are entitled to trace the $16,000 of trust corpus used to purchase the Elsea Farm and impose a constructive trust upon the farm and the stock of Elsea, Inc. There is little dispute over the $3,773.99 that Maxine Elsea withdrew from the trust account without court approval. The assets acquired with the $3,773.99 are now worthless, but appellees have agreed to pay appellants the entire $3,773.99.
 {¶ 9} On October 21, 1997, the trial court granted summary judgment for appellees on the grounds that appellants had failed to create a genuine issue of fact as to whether they are entitled to trace the $16,000 into, and impose a constructive trust upon, the assets acquired with this money. Appellants appealed, and in Barthelmas v.Barthelmas (Jan. 7, 1999), Pickaway App. No. 97 CA 48, this court reversed the trial court's grant of summary judgment. In reversing the trial court, this court indicated that a genuine issue of fact did exist on the question of appellants' right to trace the $16,000 and impose a constructive trust upon the traceable assets. Specifically, this court stated that an issue of fact existed regarding "the identity of the corpus at the time of the demise of Maxine Elsea," that is, whether (1) the trust corpus consisted of cash or its equivalent at the time of her death, in which case appellants' recovery would be limited to the cash, or (2) the trust corpus consisted of real estate and stock at the time of her death, in which case appellants could recover their proportionate shares of the value of those assets.
 {¶ 10} On remand, the trial court ordered the issues of liability and damages bifurcated for trial. Beginning on August 2, 2002, a trial was conducted to determine whether appellants were entitled to trace and impose a constructive trust on all assets into which the original $16,000 could be traced or were entitled to recover only their respective shares of the $19,744.37 trust corpus, plus interest from the date of Maxine Elsea's death. On November 26, 2002, the trial court issued a decision and entry in which it found for appellees on all of appellants' claims and ordered that appellants were entitled to recover only their respective shares of the $19,744.37 trust corpus. Appellants appeal from the trial court's decision and entry, assigning the following errors:
1. The Trial Court erred in entering a judgment determining Plaintiffs-Appellants' beneficial Interests in a trust without tracing assets purchased by the Trustee with trust funds into the hands of the Trustee's estate and other parties who obtained title to the assets with knowledge of the trust.
2. The Trial Court erred in entering a judgment denying Plaintiffs-Appellants the right to trace assets purchased by the Trustee with Trust Funds into the hands of the Trustee's estate and other parties on grounds that Plaintiffs-Appellants failed to prove that the Trustee had committed breach of trust or fraud.
3. The Trial Court erred in sustaining an affirmative defense of Defendants-Appellees, that Plaintiffs-Appellants were bound by a court order approving their trustee's substitution of a personal note for $16,000 for real estate purchased with trust funds, when Defendants-Appellees failed to plead the affirmative defense, the order was entered in ex parte proceedings, and the substitution was not actually litigated, directly determined, and essential to the order.
4. The Trial Court erred in not vacating the order approving the Trustee's $16,000 investment.
5. The Trial Court erred in ruling that Plaintiffs-Appellants were, because of delay in suing the trustee, barred by the doctrine of laches from tracing assets purchased by the Trustee with trust funds into the hands of the Trustee's estate and other parties.
 {¶ 11} Appellants' first four assignments of error will be addressed together, as all four challenge the trial court's conclusion that appellants are not entitled to trace their assets into, and impose a constructive trust upon, the assets of Elsea Farm and Elsea, Inc.
 {¶ 12} In attempting to establish their right to a constructive trust covering all assets into which the original $16,000 could be traced, appellants pursued two distinct theories: direct asset tracing and breach of trust. With respect to the first theory, appellants argue that they are entitled to trace and recover all assets into which the original $16,000 can be traced, irrespective of whether they presented any evidence that Maxine Elsea committed a breach of trust in using the trust assets to purchase Elsea Farm. Specifically, appellants assert that this court's prior holding required the trial court to find that Maxine Elsea did not invest the $16,000 in a note in accordance with the December 10, 1952 probate court order, but used the money to directly purchase Elsea Farm for herself and her husband. Appellants further contend that even if Maxine Elsea did invest the money in a note as approved by the probate court order of December 10, 1952, they are not bound by that court order.
 {¶ 13} Appellants first contend that the trial court erred in ignoring a binding finding of fact in our prior opinion that $16,000 of the trust corpus was converted from cash to real estate when Maxine purchased the Elsea Farm. Specifically, in our prior opinion we stated:
To begin with, there can be no doubt that Maxine Elsea as trustee changed the identity of the corpus of the fund entrusted to her. When her life estate was sold with the approval of the court in October 1952, she was ordered to invest $19,774.37 in harmony with applicable statutory law. It is also a fact not disputed by the parties that Maxine Elsea did not so invest the money and, instead, purchased the Elsea Farm from EmmaElsea and took title to it in her name individually and in that of her husband, Robert. Arguably, that action constituted a conversion of trust assets, but even if that characterization is questioned, it remains clear that the original asset of the trust for the beneficiaries, i.e., cash, was transformed into real estate. * * *
Barthelmas, supra. Based upon this language, appellants contend that the trial court was required to find that Elsea Farm and the assets into which the farm has since been transformed are trust assets.
 {¶ 14} Appellants are mistaken in arguing that the above language constitutes a finding of fact that the trial court was bound to follow on remand. Our prior opinion was issued in an appeal from a grant of summary judgment. Accordingly, any factual findings made by the trial court or this court when considering the motion for summary judgment were binding only for purposes of the motion for summary judgment. When the grant of summary judgment was reversed and the case remanded for a full trial, all issues previously determined for purposes of the summary judgment motion were again subject to determination. Thus, after making the statement relied upon by plaintiffs, this court went on to say that the identity of the corpus at the time of Maxine Elsea's death was a critical fact to be determined on remand. In fact, the reopening of all factual issues which resulted from our reversal of the trial court's grant of summary judgment proved to be of some import, as the note executed by Maxine and Robert Elsea in exchange for the $16,000 that they used to purchase Elsea Farm had not yet surfaced when we issued our prior decision. However, the note was subsequently located and was admitted into evidence at trial.
 {¶ 15} The discovery of the $16,000 note made it considerably more difficult for appellants to establish their right to a constructive trust. In the absence of the note, appellants were free to argue that Maxine Elsea had violated the February 7, 1953 entry approving the investment of $16,000 of the trust corpus in "notes secured by a first mortgage on certain real estate known as the Elsea Farm," but instead had simply used the $16,000 to purchase the farm, effectively making the farm part of the trust corpus. In light of the note, however, the trial court found that the $16,000 of trust corpus was not transformed into the Elsea Farm, but rather was transformed into a note, precisely as mandated by the February 7, 1953 entry. In light of this finding, the trial court concluded that in order for appellants to establish an entitlement to anything more than the face value of the note, they had to show that the investment in the note was improper. However, in order to challenge the propriety of the investment, appellants were first required to establish that they are not bound by the Pickaway County Common Pleas Court's February 7, 1953 judgment approving the investment in the note. Ultimately, the trial court concluded that the doctrine of res judicata, or more precisely collateral estoppel or issue preclusion, see Callowayv. Calloway, Stark App. No. 2002CA00231, 2003-Ohio-267 (discussing the various facets of the doctrine of res judicata), prevented appellants from challenging the judgment approving the investment in the note, and thus from challenging the propriety of that investment. Appellants challenge this conclusion.
 {¶ 16} "Issue preclusion operates to collaterally estop the same parties from relitigating in a subsequent action a point of law or fact that was determined in a prior action between the parties or their privies." CTI Audio, Inc. v. Fritkin-Jones Design Group, Inc. (2001),144 Ohio App.3d 449, 452. Appellants contend that issue preclusion does not prevent them from challenging the February 7, 1953 judgment, as their interests were not represented in the proceedings in which the order was entered. It is clear from the record that appellants were represented by guardians ad litem before the Pickaway County Court of Common Pleas during the initial disentailment proceeding. However, there is no evidence in the record to establish that this representation continued after October 27, 1952, when the trial court entered judgment distributing the respective shares of the sale proceeds to Maxine Elsea and William Barthelmas in trust. All entries entered after this date appear to have been entered in ex parte proceedings commenced by Maxine Elsea, but the record is simply unclear on this point. The burden of establishing that issue preclusion barred appellants from challenging the propriety of the investment in the note rested with appellees. McCrory v.Children's Hosp. (1986), 28 Ohio App.3d 49, 53. Because appellees failed to present any evidence that appellants were parties to, or were in any way represented during the proceedings which culminated in the approval of the investment in the note, they failed to satisfy this burden. Thus, appellants are not bound by the February 7, 1953 judgment and were free to challenge the validity of Maxine Elsea's investment in the note.
 {¶ 17} In challenging the propriety of the investment in the note, much of appellants' argument continues to rest on the premise that the $16,000 was not invested in the note, but was transformed directly into real estate. As previously noted, the trial court did not accept this argument, but found that Maxine Elsea had invested the $16,000 in the note. Because the note itself provides more than sufficient evidence to support this finding, we will not disturb it on appeal. C. E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. Thus, we arrive at appellants' second theory for imposing a constructive trust, breach of trust. Specifically, appellants argue that Maxine Elsea's conduct in making an interest free loan to herself out of the trust corpus was an improper self-dealing transaction, the profits of which must be treated as having accrued to the trust.
 {¶ 18} At first blush, appellants' contention that Maxine Elsea's conduct constituted unlawful self-dealing has considerable appeal. After all, the duties and responsibilities owed by a trustee to the trust beneficiaries are well established. These duties generally include the duty to be loyal to the trust beneficiaries; to keep and render clear and accurate accounts with respect to the administration of the trust; to keep trust property separate and not commingle it with the trustee's personal property; to make the trust property productive; to pay income to the trust beneficiaries at reasonable intervals; and, finally, to account and pay over the corpus on termination of the trust. Homer v.Wullenweber (1951), 89 Ohio App. 255, 259. Further, "[t]rustees are * * * bound by the obligations inherent in a fiduciary relationship, which is `"one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."'" In reTestamentary Trusteeship of Cheek, Montgomery App. No. 19513, 2003-Ohio-2515, at ¶ 27 (quoting Stone v. Davis [1981],66 Ohio St.2d 74, 78). As a fiduciary, a trustee is ordinarily completely prohibited from any self-dealing with trust property. In re Binder'sEstate (1940), 137 Ohio St. 26, 37-38. Further, where a trustee is found to have engaged in a self-dealing transaction, the transaction is voidable at the election of the beneficiaries without reference to whether the transaction was actually in bad faith or the beneficiaries were actually harmed. Id. If the transaction was profitable, the benefits will be treated as having accrued to the trust, and if the transaction was a losing one, the trustee will be personally liable for the loss. Id. at 56.
 {¶ 19} Plainly, Maxine Elsea's conduct in loaning $16,000 of the trust corpus to herself and husband for the purchase of Elsea Farm was a self-dealing transaction. It cannot reasonably be argued that Maxine Elsea did not personally benefit from this transaction. That said, however, the rule strictly prohibiting a trustee from any self-dealing was developed to deal with the situation in which the trustee's only interest in the trust is that of trustee. Here, Maxine Elsea's interest in the trust was not limited to that of trustee. Instead, Maxine Elsea also held a life estate in the corpus of the trust, which entitled her all of the profit or income derived from the trust corpus during her lifetime. As a result of her dual role with respect to the trust, Maxine Elsea's duties as trustee differed significantly from those of the typical trustee. Because she was personally entitled to all of the profits derived from the trust during her lifetime, she had no duty as trustee to make the trust corpus productive for the benefit of the remaindermen, but was responsible only to ensure that trust corpus remained intact for the remaindermen. See Cassidy v. Hynton (1886),44 Ohio St. 530, 535 (holding that a trustee who also held a life estate in the trust corpus was "entitled to the use of the [trust] property for her own benefit, and [was] legally responsible only for the original amount, — the principal"); 4 Scott on Trusts, Section 99.3 (indicating that in situations where one of several beneficiaries is also the sole trustee, problems arise only where the trustee's actions diminish the corpus). When Maxine Elsea made an interest free loan to herself and her husband out of the trust corpus, she did nothing more than forgo her future right to the interest she could have earned from an interest bearing investment. Accordingly, Maxine Elsea did not engage in unlawful self-dealing in making the interest free loan herself. In fact, so long as the interest free note was secured by a mortgage, the trust corpus was fully protected and Maxine Elsea's conduct did not even amount to a simple breach of trust.
 {¶ 20} However, when Maxine Elsea released the mortgage securing the note in 1970 without accounting for the $16,000 in trust funds she did commit a breach of trust. If the note was, in fact, never repaid, she left appellants' interest in the corpus unprotected, while if the note was repaid, she commingled trust funds with her personal funds. Appellants also contend that Maxine Elsea's failure to provide an accounting of the trust for more than 40 years and her failure to notify appellants of the existence of the trust constituted breaches of trust. We need spend little time addressing these breaches or alleged breaches of trust, as appellants have provided no evidence of damages arising therefrom.
 {¶ 21} The Restatement of the Law 3d, Trusts: Prudent Investor Rule, (1992), Section 205, sets out the damages which may be awarded for a breach of trust as follows:
A trustee who commits a breach of trust is
(a) accountable for any profit accruing to the trust through the breach of trust; or
(b) chargeable with the amount required to restore the values of the trust estate and trust distributions to what they would have been if the trust had been properly administered.
In addition, the trustee is subject to such liability as necessary to prevent the trustee from benefiting personally from the breach of trust[.]
In the present case, it is undisputed that appellees are ready and able to pay appellants the full value of the trust corpus. In addition, appellants have provided no evidence that either the trust or the trustee profited as a result of the trustee's failure to account for, or provide an accounting of the trust funds, commingling of the trust property with her own funds, or failure to notify appellants of the existence of the trust. In the absence of evidence of damages of the sort set forth in the Restatement, a claim for breach of trust will fail. Pickerel v.Huntington National Bank (Mar. 19, 2002), Franklin App. No. 01AP-911.
 {¶ 22} Based on the foregoing discussion, we conclude that the trial court properly determined that appellants are entitled only to their respective shares of the $19,744.37 trust corpus, plus interest. Appellants' first, second, third, and fourth assignments of error are overruled.
 {¶ 23} Our resolution of appellants' first four assignments of error renders appellants' fifth assignment of error moot and we decline to address it. App.R. 12(A)(1)(c).
 {¶ 24} Appellants' first four assignments of error having been overruled and appellants' fifth assignment of error having been declared moot, the judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Bowman, J. and Klatt, J: Concur in Judgment and Opinion.
LAZARUS, BOWMAN AND KLATT of the Tenth Appellate District, sitting by assignment of the Ohio Supreme Court in the Fourth Appellate District.
[1] The one-half of the sale proceeds held in trust for William Barthelmas and his heirs is not the subject of the present case and will not be addressed further.